Please all rise. Here to you, here to you, here to you, this Honorable Howard Ford from the Washington, D.C. District is now open for subpoena adjournment. The Honorable Robert Hume, President of the Society. Please be seated. Your Honor, in this case, I'm about to sue you at 16 cash, nearly $14,000. Old Republican Insurance Company, Mr. Appleby, and Joseph Landry, defendants. Mr. Howard Dunn, defendants.  you may proceed. Mr. Dunn, you may proceed. Thank you, Your Honor. May it please the Court. The issue before the Court is whether or not the Circuit Court properly granted the plaintiff's motion for judgment on the pleadings. And the answer to that question is no. First, the face of the pleading itself showed that the insurance company here was not entitled to a set-off. And we outlined the reasons why in our brief. But because there was a settlement agreement under the plain language of the policy, there could be no set-off for the workers' comp benefits that had been paid. This is just for past comp, right? I'm sorry? Past workman's comp? Well, according to the insurance company, they're entitled to a set-off for the return of the money that they paid. That was why it was to be kept in the trust? No, the reason it was kept in the trust was because at the time the comp was still unsettled. They were not agreeing to comp. So we put it in the trust because of the fact that there had been a lien that was being paid by the comp carrier in the meantime. That lien was continuing to rise as the case continued. So we put the money... To the union? Correct. Was the word indemnify ever used? In what? In the lease or any documentation? Indemnify was used in the release, the post settlement agreement release that the insurance company drafted. And as we point out, indemnify does not mean set-off. It does not mean reimburse in the sense that they, the insurance company, would like the court to find. What it means is, what it means in any release that I've ever seen talking about liens is that if a lien is paid by another party, that in this case Mr. Lahey is obligated to pay, he must then repay that lien. So usually, let's for instance, in a case of car accident a case like this, the workers comp, if he's received comp, would have a lien on the tortfeasor's policy limits. So $100,000. So if the workers comp carrier paid $50,000 in medical bills, they would have a lien for that on the $100,000 underlying tortfeasor policy. And then that would be repaid out of the $100,000 settlement. So that's indemnify in the context of any release I've ever seen. That's what they're talking about when they're talking about indemnification. How is this distinguishable? Because there's no lien that can exist on workers comp, on an under-insured motorist benefits policy. The law is clear that workers' compensation liens do not attach to under-insured benefits. And we set a case in our brief that talks about that, but it's been clear for decades that you cannot have a workers' compensation lien attached to under-insured benefits. So here, what they attempted to do in their argument is recreate a right to a set-off through this released document. The problem is that... What's the reason or the rationale behind that policy? Which policy, Your Honor? I'm sorry. That the lien doesn't attach to under-insured motorist coverage. Because the statute, the workers' compensation statute, when it talks about liens, it's been construed not to attach or not to apply to under-insured benefits because of the language of the Workers' Compensation Act. So it talks about... I don't remember the exact... I've got it in the brief here. It's on the page. Two of our reply brief and it's Terry v. State Farm 287 8 at 12 and 13. We hold that an employer or its workers' compensation may not necessarily lien pursuant to Section 5B of the Act against proceeds of an under-insured motorist claim to recover benefits paid to an employee pursuant to the workers' compensation plan. And if you look at the language you can see in that case why it is. I think it's because the under-insured benefits is a contractual right that the injured party is entitled to as opposed to a common law right of action. And I think that's the distinction that that court makes. But there's no claim here in this case that the insurance companies claim right of repayment as a lien. They're not claiming we're entitled to $900,000 because we have a lien on that money. They're not saying that. So you're saying it's based upon contractual rights, duties, and obligations as opposed to some concept that that under-insured motorist coverage, ipso facto, the uninsured motorist coverage was not sufficient to adequately cover the damages that were realized. Right. So that's the double recovery argument they're making that they're saying we're getting double recovery, which is, first of all, that's not true. Workers' compensation only covers certain elements of damage. Common law tort actions cover many more different types of damages. So the comp really only pays medical bills. It pays some wage differential for wage loss. And if there's a permanent injury, it pays some portion for that. But it pays nothing for pain, suffering. It pays nothing for loss of normal life, disfigurement. Other elements of damage are not covered by the comps. So this is not a double recovery in any sense of that term. But I point out that their own policy So the difference is because this recovery was under an under-insured coverage claim, as opposed to had, I think it was Mr. Chandler, had $2 million worth of regular insurance, then they would be entitled to a setup? No. They would be entitled. They'd have a lien that would attach to that $2 million policy. But here you're saying that lien does not attach because this arises from a contract obligation. Right. The Terry case and many other cases talk about how that... But that's the difference. That's the fork in the road because this is under-insured as opposed to other insurance, shall we say. Correct. That's the difference. That's the difference. But remember, under their own policy, they contemplate if you're hung up on double recovery, they contemplate it. Because it says that they don't get a set-off if there's a settlement agreement. That's clear language in the policy. So under their own policy... Is that an agreement to the contrary? Or do you think that applies to all settlements all the time? Any settlement agreement under their own policy. Any settlement agreement. Why would they ever agree to settle anything then? Well, that's the point they make in their brief. Oh, that was a pretty reasonable argument, actually. Well, a couple points. One is... Two points. One, they have an obligation to act in good faith. True. Obviously. So if they just say, we're never going to settle anything, they're going to get hit with bad faith claims. So that's not going to happen. Two, if, as in this case, the tortfeasor insurance company offers the limits and they say no, they have to substitute in and write me a check for $100,000 and then litigate the case on their own, which they will not do. I mean, in the vast majority of these cases, they know there's no more money to be had. How is uninsured motorist coverage handled? Is it handled like underinsured or is it handled by regular, classic insurance? I'm not sure I understand. Usually, Your Honor... Well, we're talking about a fork in the road, which usually means it looks like a Y. Right, yeah. But we don't have just two forms of insurance coverage. We have the typical liability insurance coverage. Mr. Chandler had it, but it was under certain limits. It was inadequate. And then you have uninsured motorists. So you've got three categories of insurance. So, what are we looking at? Are we looking at the imprint of a bird's foot where this one road goes off in three directions or is it still two but uninsured and underinsured go off in the same direction? Well, it's really just two. So, you can't have both uninsured and underinsured. If the torque feeser has insurance... You said we'd have joint torque feesers. Right. But what happens in these cases as it happened in this case is once they tender the limits, then you move to the next stage, which is the underinsured and or uninsured claim, which is what we were proceeding under when they tendered the policy. So you're saying that if this was uninsured motorist coverage, there wouldn't be a set-off either? There is no... If it's just underinsured under their own policy because of the settlement agreement, there's no set-off. In the Slusher case that they relied on... Are you referring to general law now or are you referring to the specific facts in this case? I'm talking about the specific facts in this case. Based upon the contract of insurance. Correct. Right. Under the Slusher case, it does talk about, and I agree that there is a set-off for workers' compensation benefits paid normally. In the Slusher case, it didn't have this language that's present here, which distinguishes it. Here it's clear they... I don't think they dispute that once there's a settlement agreement, they no longer get a set-off for any kind of benefits that have been paid. So that's why you can see they had this release drawn up in their minds. We look at the release and don't see anything in it that suggests we're going to, Mr. Leahy, hold this money in trust and you have to pay it all back to us if we give you the equal amount in capital. Why is it held in trust then? If the clear policy language is that he gets the full $900,000, why would he have to hold it in trust at all? Why wouldn't they just write him a check and he'd get the cash? Because remember that at the time they paid us the under-insured benefits, the cap issue was still being litigated, number one. And number two, there was this lien because his union was paying the medical bills. And so at the time they paid the $900,000, that number was cut out. He would have to pay his carrier back. Why wouldn't they just write him a check for $900,000 and then let the union go after him for the $300,000? Because we had a claim for cop. And so our position was the cop carrier should be paying his medical bills, not the union. But because they were fighting that, the union, we had to protect the union's interest, we had to protect potentially the cop interest if they ended up being right in their argument. They paid benefits. Let's say they paid benefits and it turned out that they were right, they didn't know us any cop. We'd have to pay some of that money back to the cop carrier for that. So we held the money in trust while the cop issue was being litigated and to protect the union to make sure that there was enough money. If the union paid a million dollars in benefits, we would have to pay that money to the union. And so we had to the union would not continue to pay benefits unless it was assured it was going to get some money back. So that's why we put the money in trust. It was not because we're going to hold it in abeyance and then give it back to them if they lost the cop case. Is your claim in a better position under your argument as opposed to had Chandler's policy limit been a million dollars? He is... Well, that's a math question. Right. It's a math question. Is he better off financially based on your position as opposed to if Chandler's policy was a million dollars? It really depends on how much of the lien you have to pay back. If Chandler had a million bucks, there would be a workers' compensation that would attach to that. But they don't get the full lien payment. There's a math analysis that goes into it. They get a reduction as an attorney fees. If there's future medical, it's a complicated math problem. So the answer is I don't know the answer. It probably is that he's in a better position. But I don't know the answer because he'd have to crunch the numbers. Under your scenario, he's getting $900,000 free and clear from the insurance company, correct? Well, no. We agree that they have a... The union has to be repaid. From that $900,000? Well, that's an issue I think we have to litigate below. On the $300,000? $310,000? Correct. I think that needs to be litigated below. So we're just talking about the workers' comp? No, we're not talking about that $310,000? Right now, what we're talking about is whether or not they're entitled to the $900,000 back. That's what we're talking about. Whether or not of that $900,000 we have to pay the union back some or all of their lien is something that we need to deal with below. But Judge Ackerman's order says that we need to write them a check for $900,000. That's how we read it. Were the workers' comp benefits up to that amount already? No. It was $114,000 up to that point. There may have been some more in the future. Judge Ackerman's order was you pay $310,000 for the medical bills, you pay $114,000 for the comp up to that point, and then any other comp that may take place. So then every time he gets a comp check, we have to write them, or it wipes out the comp. There's something that would have to happen to set that off. But again, they're not entitled to that under their own policy. The policy language clearly says that the maximum limit of insurance with a settlement agreement is the million dollars minus whatever the underinsured carrier is paying. So you're saying that's $900,000. Correct. But the insurance company, under your scenario, is on the hook for, at least right now, at least $1.3 million, correct? Well, because you're including the union lien? Well, I guess I'm throwing that together with the workers' comp, and maybe I shouldn't be, because you're saying it hasn't been litigated yet. Foolish. We don't think it's been litigated, because we think we have equitable defenses by the fact that they wrongfully denied the comp coverage for years, and now they're seeking to have us repay a lien that they should have paid in the get-go, and it would have been a difference to Mr. Leahy, because the amount of the lien would be much less. So that would be more of a sanction as opposed to coverage limits, correct? It's not a sanction, but had they paid the medical bills, the lien that he'd have to repay would not be $300,000. It would be much, much less. So it's really not fair to Mr. Leahy that he's being forced to pay the BRAC rate when this court found that they should have been paying kind of a... Let's forget about $310,000 right now. So you have $114,000 at the time of the judgment. So you're looking at $900,000 plus $114,000. So at least at that point in time, he's $14,000 above the million-dollar limit to the UIM coverage, correct? But he has coverage under two different policies. It's the same policy for the same company, but he's got the benefit of underinsured coverage, and he has the benefit of being covered by COMP. Why limit him to only one when he's allowed both? He's paying through his years of working for this company the right to have coverage under both policies. So why say, we're not going to give you this one because you have this one? That's not the way the insurance policy reads. And the insurance policy specifically says, we are not going to set off underinsured benefits from workers' cap benefits paid if there's a settlement agreement. Did you ever see the MoneyPython insurance sketch? No. The was making a claim and Michael Palin was the insurance agent that found the insurance policy in his tweet sports jacket, and then reviewed the insurance policy and the policy indicated that it does not pay any claims. So Michael Palin told him, you bought a very good policy and it was a very good rate, but unfortunately you bought our no-claims policy. And it seems to me that your argument is very similar to that where you say he's got two policies but he can't collect on one of them. I'm saying no, I'm saying he should collect on both. He's got two policies that cover him. They're saying he can't collect on both. It's like the insurance sketch, which is you bought a policy where you can't make a claim. So stipulated. I agree. Thank you. Any other questions? Thank you. Police of the Court. Counsel. My name is Jill Lewis and I represent the Plaintiff Appellee Old Republic. So underinsured motorist coverage is a statutory creation and it was created for one purpose and that purpose was to place an injured party  he or she would have been in had the tortfeasor been adequately insured. So in this case as your Honor pointed out had Mr. Chandler had a million dollars in coverage let's say he paid a million dollars in tort recovery that Leahy now receives Leahy would then owe all of that money back to the workers to pay off the workers comp claim and that's required by section 5B of the workers comp act. He would not be able to get a one million dollar recovery and a one million dollar workers comp recovery. Illinois law prohibits that. In this case Leahy because Chandler is underinsured he wants the UIM and he wants the workers comp and you cannot get that. Illinois case law is clear that in most situations that we see and in fact I am not aware of any case where the UIM. Can I interrupt you and ask? Sure. The proposition strikes me as being not totally accurate because if the workers comp claim is less than the amount of money that's realized with the uninsured motorist claim then you will or the plaintiff will get something out of the uninsured motorist or underinsured motorist coverage won't they? If there's an offset and the offset is less than the amount of the settlement of the underinsured motorist coverage. Let's for example a hundred dollars and the workman's comp claim is fifty. He still gets to keep fifty dollars doesn't he? The workman's comp claim doesn't take a hundred dollars even though they only paid out fifty. Well I think under section 5B they paid the attorney twenty five percent or something to that effect. But essentially the plaintiff will not get a double recovery. It might be as a practical matter that there won't be any money realized but it's not based upon the idea that a set off is impossible or I should say that there is never the opportunity for double recovery. There is a possibility that somebody might get more money under the uninsured coverage if there were joint tort feasors or uninsured motorist coverage. Well your honor no actually. There wouldn't be because if there is a million dollars of coverage that Chambert had other than attorney's fees in the worker's comp case he's going to get a million dollars. He's going to get it because he's not going to get it on the work comp side. You know so the whole pot is going to be a million dollars. I want to point out in this case we are not seeking a set off. Okay. Had we not paid the UIM benefits and the worker's comp benefits had been paid we would then get a set off. That's what the case law says. But in this case because the work comp case was being contested there was a UIM claim filed by Mr. Leahy and in good faith we wanted to pay on that but we knew that there was a chance that we might lose in the commission and have to pay worker's comp benefits which is precisely why the release was drafted in the way it was and let me just point out there's no evidence that Old Republic drafted it 100%. None of that was before the Sugar Court and in fact that's not the truth. So but draftsmanship aside since there is no ambiguity the reason the release is written as written which is Mr. Leahy we will give you this $900,000 but if we win in the commission you can have it all it's yours because we won't be paying worker's comp benefits we just won so we'll pay you the UIM but if we lose in the commission and we have to pay worker's comp benefits we're going to want that $900,000 back because we don't want to pay twice and you're not entitled to a win fall of getting both sides of the coin and for that reason the money was put into escrow as he agreed to do and specifically he agreed to hold harmless and indemnify which the Supreme Court has held is synonymous with reimburse indemnify Old Republic for one any and all valid liens slash subrogation that would include the union lien and two any worker's comp any payments made in the worker's compensation case the language could not be any clearer the circuit court here got it right the release is consistent with public policy which does not allow him to get both UIM tort recovery and worker's comp it puts him in precisely the exact same position he had been in had Chandler been adequately insured and that's why it's a double recovery if counsel is correct pardon? and that's why it's a double recovery if counsel is correct yes yes and it's a win fall which is not what UIM coverage is entitled to do it's to put you in your shoe if the insurer had been adequately covered you know the tort fee sir and so here you know if Old Republic had won the commission I think they were contesting on he wasn't in the course of his employment or something to that effect which is a different story but you know they lost and so they had to pay worker's comp but they shouldn't have to pay worker's comp and UIM and the release contemplates that it was signed by Mr. Lakey it is clear that he must indemnify and I think I think if I heard correctly when Mr. Dunn was up here he essentially acknowledged that at a minimum Old Republic's entitled to the $310,000 back I think he acknowledged that there may be some amount but he wants to litigate that below based upon bad faith denial of the worker's comp benefits well I think it's a little bit late to be bringing up new that claim below and as Judge Ackman specifically said in his order Old Republic is entitled to $310,000 that it paid to the union and at no time did Mr. Lakey ever bring up any bad faith this is the first time I'm ever hearing of such a thing and I don't think it's proper to do it at the appellate level for the first time so I don't even know where that's coming from honestly but he had ample opportunity to file an affirmative defense or I don't know bring it up in one of the motions or in his motion for reconsideration but not in front of your honor I mean he didn't even bring it up in any appellate briefs so um does the release create a improper lien of the UIN benefits does the release create an improper lien of the UIN benefits counsel cited Terry for the proposition that we can't have a lien on these benefits is that what happened here no because we're not seeking reimbursement of a workers a workers compensation lien the workers compensation lien attaches only to tort recovery I get that we're seeking reimbursement of payments that we have made and by the way I don't have the precise figure but the benefits that have been made are if not close to 900 have exceeded 900,000 including the 310 or not including the 310 I'm sorry including the 310 or not including including the workers comp payments will exceed by a significant amount $900,000 if it hasn't already um I mean this I can't remember it's been pending for a while and they have paid all the back benefits Old Republic has done everything that it has had to do and more I think we're entitled to contest in the commission but they could have arbitrated this UIN claim but they didn't they saw that it was going to exceed 900,000 and they paid the 900,000 but they paid it with conditions and those conditions were you've got to put it in escrow and if we lose the commission and we have to start paying you you've got to give us that money back you've got to reimburse us, you've got to indemnify us and that is what the release says and that's what Mr. Lakey signed off on and it is consistent with Illinois public policy which would not allow him to get both sides of the coin and I respectfully request that this court affirm the interim judgment in favor of Old Republic Was the release drafted because the policy would have allowed for Mr. Doug's argument to prevail under what's a settlement agreement? Okay so as you pointed out the you know that section is in the limits of insurance and it specifically says addresses what the limit of insurance will be when there's a settlement agreement, when there's not a settlement agreement it never says you're precluded from freely entering into whatever contract agreement you want whatever release you want it merely says most we will ever pay is in this instance $900,000 it doesn't say we can't request that money back, we can't ask that you indemnify us if we have to pay workers comp, nothing of the sort so the fact that there was a settlement agreement certainly did not preclude Old Republic and Lakey from entering into a contract which it did and in that contract Mr. Lakey agreed to indemnify Old Republic for I hate to be repetitive but the union lien or any liens any and all valid liens they want to limit it to certain kinds of liens but any and all is very very broad, Supreme Court has said you don't have to specify what liens because you've already said any and all it would be superfluous to do so so at the end of the day it's unfortunate that Mr. Chandler didn't have enough insurance but Old Republic has done what it is required to do under the law and you know pursuant to the release and the agreement signed by Mr. Lakey he should similarly do what is required by him and that is to reimburse Old Republic for up to a maximum of $900,000, precisely and you know the workers' comp will just continue on until that is resolved hopefully one day or continues on ad infinitum thank you thank you Mr. Gunn just a few points here Justice Burke I think the answer to your question you just posed is incorrect but for this release there would have been no set off and I think if you look at the language of the Powell standard section D2 it specifically says except in the event of a settlement agreement the limit of insurance will be reduced by the comp benefits so if this release were never entered into they'd have no argument that the $900,000 would be paid back does that language and that provision preclude a contractual release such as was entered into here? I would say yes and I think that you cannot as an insurer contravene your own policy with an insured by entering into that kind of language or release or whatever I think public policy would say this is the deal you can't create a side deal with an insured and basically hold him for ransom where I can give you the $900,000 unless you sign this and that was the deal that he was offered and why would Mr. Leahy ever agree to hold on to $900,000 and then give it back if he's right in the comp that makes no sense whatsoever because under the plain language here he's entitled to keep that entire amount it would make no sense and the reason he did is if you look at what he agreed to do he agreed to hold Mr. Lewis harmless and indemnify them for any and all valid subrogation Ms. Lewis just admitted their claim of $900,000 is not a lien it's not a lien so that doesn't fall within that provision of the release that he agreed to indemnify what if there was a different carrier doing workers council this case is a little maybe it's not unusual it's the same carrier but what if there was a different workers comp carrier who's paid all this money paid in excess of $900,000 I mean is your argument that your client still gets the $900,000 and then the workers comp carrier is out all that money that they paid? It would depend on what the policies said I mean here the reason why When you say that, which policy? Both, I mean you'd have to look at both policies because their right to reduce or get a set off for comp is conditioned on if there's a settlement agreement or not if there is a settlement agreement which there was, then they don't get a set off, that's in their own policy and so yes the reason in this case why is because it's the same insurance company, you just need to look at one policy to figure that out I don't know the answer is if there was another insurance company, it would depend on what their policy said and how they limit their right to a set off You'd have to look at that language Is this case kind of sui generis because of the fact that the union got involved? Yes The union is a problem only in the sense that this is a third party we have to deal with to cover the medical bills while they were fighting the comp, somebody had to pay it and luckily the union was there to step in Well, I thought during your first argument that you were arguing that the reason for the release was because of the contentious arguments being made by the plaintiff's insurance company and the union, and so if the union weren't in this, would this be much simpler? It would have been Because then maybe there wouldn't have been a release at all Under your theory? Because there would be no means out there that we'd have to repay Remember indemnify means you pay something that I owe to you and then I need to pay you back because if it doesn't mean you paid me something I've got to give it back to you If you look at the language in the Victoria Shurty case where the Supreme Court explains what indemnification means it means for somebody who's primarily liable as an obligation to repay somebody who pays something that's secondary to the third party Was this release negotiated or was it written and accepted written by one side and accepted by the other without any amendments? I don't know the answer to that I wasn't involved in the case at that point That definition, if you look at Black's Law Dictionary, is like the third definition of indemnity The first, I think, is duty to make good any loss incurred by another So I mean would that not apply to this situation? But it's not a loss incurred by the insurance company, it's an obligation that they owe under their underinsured benefits policy that they agree they owe that's why they pay you $900,000 That was their obligation So it's not like a loss where they injured us and they owe us It's a contractual right that we had to that, we were entitled to that money that's why they paid that I said one other quick question that counsel points out that in her opinion, this argument about the $310,000 was never made before But this is judgment on a pleading was granted, we never got going in this case They filed a complaint and a motion for some judgment on the pleadings and that was granted We had no opportunity to do any discovery You never filed an answer? We did Wouldn't that be the time to raise an affirmative defense? Well You could raise it then, but you don't have to It's not required that you raise it in the answer There's a Supreme Court statute, you're allowed to raise it later on, you can ask for a leave to file We really just started in the deck action when it was granted So I don't think we'd be barred if this case were amended from raising that level I don't think that the court would have the opportunity to do that Thank you We'll take the case under advisement